UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| GARNELL JAMISON, | ) CASE NO.:  1:24-cv-01397 |
| | )               1:21-cr-00123 |
| Petitioner, | ) |
| | ) JUDGE JOHN R. ADAMS |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) **MEMORANDUM OF OPINION AND** |
| | ) **ORDER** |
| Respondent. | ) (Resolves Docs. 226, 228, 238, 245, 246) |
| | ) |

This matter is before the Court upon Garnell Jamison's ("Jamison") *Motion to Vacate, Set Aside, or Correct a Sentence* pursuant to 28 U.S.C. § 2255 (Doc. 226). The United States of America (the "Government") filed the *Government's Response in Opposition to Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255*. Doc. 245. Jamison filed an additional reply. Doc. 246. The matter is now fully briefed and ready for disposition. For the reasons set forth herein, the Motion is DENIED.

**I.  PROCEDURAL BACKGROUND**

A federal grand jury returned an indictment charging Jamison with (i) conspiracy to commit federal program theft in violation of 18 U.S.C. § 371 (Count One), (ii) three counts of federal program theft in violation of 18 U.S.C. §§ 666(a)(1)(A) and 2 (Counts Six – Eight), iii) five counts of aiding and assisting in the preparation of false returns in violation of 26 U.S.C. § 7206(2) (Counts Nine – Thirteen), iv) tampering with a witness in violation of 18 U.S.C. §§ 1512(b)(1) and 2 (Count 14), and v) falsification of records in federal investigations in violation of 18 U.S.C. §§ 1519 and 2 (Count 15). Doc. 5. In short, the indictment alleged that Jamison co-

conspired with Kenneth Johnson and two others (one his co-defendant – John Hopkins, and another named but not charged – Robert Fitzpatrick) to operate several schemes wherein they would access funds appropriated to a local development corporation by the federal government, and improperly provide for and collect reimbursements from Fitzpatrick, a city employee. Doc. 5. The indictment also alleged that Johnson and Jamison aided and assisted in the preparation of false tax returns and obstructed justice. Doc. 5. A jury found Jamison guilty as to all counts. Doc. 131.

The Court sentenced Jamison to 60 months' imprisonment and three years' supervised release and assessed a monetary penalty of $738,379.55. Doc. 177. Jamison filed the *Notice of Appeal* (Doc. 179) soon thereafter and the Sixth Circuit, addressing his and Johnson's appeals together, affirmed on all grounds. *See United States v. Johnson*, 79 F.4th 684 (6th Cir. 2023). Jamison then filed the *Motion to Reduce Sentence* (Doc. 221) which the Court denied. Doc. 237.

Jamison then filed the instant Motion and the additional supplement and reply as a final attempt at a sentence reduction, wherein he argues that he was denied effective assistance of counsel and that there is new evidence to support his innocence. Docs. 226, 228, 246.

II.    LEGAL STANDARD

A prisoner in custody that moves to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255 must show that (i) the sentence was imposed in violation of the Constitution or laws of the United States, (ii) the court was without jurisdiction to impose such sentence, (iii) the sentence was in excess of the maximum authorized by law, or (iv) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). Jamison's claims of ineffective assistance of counsel (Grounds One – Six) fall in the first category because he alleges that his constitutional right to the

effective assistance of counsel was violated. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

A motion made pursuant to 28 U.S.C. § 2255 is the appropriate vehicle for raising a claim of ineffective assistance of counsel. *United States v. Daniel*, 956 F.2d 540, 543 (6th Cir. 1992) ("Ineffective assistance of counsel claims are best brought by a defendant in a post-conviction proceeding under 28 U.S.C. § 2255 so that the parties can develop an adequate record on the issue.") The test of counsel's effectiveness was set forth by the Supreme Court in *Strickland v. Washington*. The measure used is whether the representation fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). To succeed on their claim of ineffective assistance of counsel, the defendant must show both a deficient performance and resulting prejudice. *Id.* at 688. Counsel's performance is evaluated considering all circumstances, based on their perspective at the time. *Snider v. United States*, 908 F.3d 183, 192 (6th Cir. 2018) (citing *Strickland*, 466 U.S. at 689). Further, counsel's strategic choices are granted a high level of deference under the presumption that the challenged action might be considered sound trial strategy. *Tremble v. Burt*, 497 Fed. Appx. 536, 574 (6th Cir. 2012) (citation and internal quotation marks omitted). The second part of the *Strickland* test – whether there was resulting prejudice – is more difficult. To succeed on this prong, a defendant must prove that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Bullard v. United States*, 937 F.3d 654, 661 (6th Cir. 2019) (citation omitted).

### III. ANALYSIS

#### a. Brady Violations

Jamison first argues, in identical statements as his co-defendant Johnson, that appellate counsel was ineffective when they failed to raise evidentiary issues on appeal. Jamison claims that

3

the Government violated his due process rights under *Brady v. Maryland,* 373 U.S. 83 (1963) by suppressing evidence that would have impeached its witnesses and established statute of limitations issues with respect to the conspiracy charge (Count One). Doc. 226 at 3, Doc. 246 at 4–8.

Decisions about what arguments to present on appeal are left to the sound professional judgment of counsel. *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). To establish a *Brady* violation, the movant must show that the prosecution withheld favorable evidence that was material to his conviction or sentence. *Jones v. Bagley*, 696 F.3d 475, 486 (6th Cir. 2012). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (internal quotation marks and citation omitted).

In the Motion, Jamison vaguely alleges that a letter from the Cleveland City Council Clerk Emily Lipovan would have impeached the Government's key witness [Fitzpatrick] and "established time-barred issues." Doc. 226 at 3. Then, in his reply, Jamison expounds upon his arguments by claiming the letter "undermines the government's entire conspiracy theory and Fitzpatrick's credibility…Fitzpatrick's testimony was central to the conspiracy charge." Doc. 246 at 4. He further states that he would have been acquitted of the conspiracy charge if the jury would have been presented with the letter. *Id.* However, a review of the letter indicates it does not mention Fitzpatrick once. Doc. 246-1. Therefore, it is unclear how the letter would impeach Fitzpatrick or otherwise be material to Jamison's conviction. Further, the Government indicates it did not have this letter in its possession, but both Jamison and Johnson did. Doc. 245 at 8. As the Government did not withhold the evidence and it was also not material, Jamison cannot establish a *Brady*

4

violation. *See Jones* at 486. Therefore, counsel's decision to not present this argument on appeal is not indicative of a deficient performance or prejudice. *See Bullard*, 937 F.3d at 661.

Next, Jamison states that Johnson retired in December 2012, and the Government knew this but did not tell the grand jury. Doc. 226 at 3. He then clarifies in the reply that Johnson's retirement in December 2012 was the last overt act in furtherance of the conspiracy, despite his rehiring one week later, and therefore the statute of limitations on this charge ended in December 2017 and the indictment is time-barred as to the conspiracy charge. Doc. 246 at 6. However, similar to the Lipovan letter, Jamison has not established this evidence was suppressed in any way. Rather, common sense suggests Jamison was perfectly aware of Johnson's retirement date given their lengthy history and, therefore, the Government did not somehow keep this information from him. As such, Jamison again cannot establish a *Brady* violation and counsel's decision to not present this argument on appeal was not ineffective. *See Bullard*, 937 F.3d at 661.

Last, Jamison refers to another letter, this one from the City of Cleveland Director of Law, Barbara Langhenry. He claims he did not receive the letter, but that it would impeach the indictment and therefore should have been presented to the grand jury and petit jury. Doc. 226 at 3. In his reply, Jamison argues that the letter, if presented to the jury, would have provided him with the argument that the City of Cleveland was at fault for the failure to obtain federal (HUD) approval for payment to Johnson's children for their work with the local development corporation, Buckeye Shaker Square Development Corporation ("BSSDC"). Doc. 246 at 7. He states that if this argument had been available, it would have altered the outcome of his case. *Id.* When an issue is addressed by the appellate court on direct appeal, petitioner cannot use a § 2255 motion to relitigate the issue, absent an intervening change in law. *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996). Here, the Langhenry letter was addressed on appeal and the Sixth Circuit affirmed this

5

Court's decision to not admit it. *See United States v. Johnson*, 79 F.4th 684, 704–705 (6th Cir. 2023). Further, Jamison does not allege an applicable change in law. Therefore, the admissibility of the letter cannot be relitigated here.

Jamison has not established prejudice supported by *Brady* violations with respect to either letter or evidence of Johnson's 2012 retirement. *See Bullard*, 937 F.3d at 661. Accordingly, this ground for relief is denied.

  b. **Improper Expansion of the Indictment**

Jamison next argues that counsel was ineffective when they did not appeal the introduction of certain information during trial. Doc. 226 at 4–5. He provides a disorderly list of supporting facts, including statements the Government made about his behaviors, issues with jury instructions, and the characterization of BSSDC. *Id.* Then, in his reply, Jamison clarifies ground two as a claim that his conviction and sentence are unlawful because they are based on an unauthorized broadening of the indictment as to counts two through five via a constructive amendment, which violates his rights under the Fifth and Sixth Amendments because he was not charged with these counts of conspiracy or federal program theft. Doc. 246 at 9–11.

An indictment is amended, either actually or constructively, when the charging terms are altered. *Martin v. Kassulke*, 970 F.2d 1539, 1542 (6th Cir. 1992). As to a constructive amendment, this occurs when "the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment." *United States v. Bradley*, 917 F.3d 493, 501–02 (6th Cir. 2019) (internal citation and quotation marks omitted). The government may present proof beyond the conduct charged in the indictment and there is not a constructive amendment when the jury

6

instructions mirror the charges in the indictment. *Id.* at 502–03. Here, a comparison of the Indictment (Doc. 5) and the final jury instructions (*Transcript of Trial Proceedings*, Doc. 132) indicates no discrepancy between the two, with the jury instructions reflecting only the charges in the indictment and associated elements of same, therefore there was no constructive amendment. *See Bradley*, 917 F.3d at 502–03. Further, the Court specifically instructed the jury as to their duty to consider evidence against each defendant on each charge, rather than to let their judgment as to one defendant influence their judgment as to another. *Transcript of Trial Proceedings*, Doc. 132.

While not entirely detailed in his explanation, Jamison appears to take issue with the Government's burden of proof with respect to indictment charges that may have indicated "and/or" followed by evidence proving only the disjunctive. Doc. 246 at 9. This approach of charging a crime in the conjunctive but proving it in the disjunctive is wholly permissible. *United States v. LaPointe*, 690 F.3d 434, 440 (6th Cir. 2012). As the Sixth Circuit has explained:

> The government's right to charge in the conjunctive and prove in the disjunctive reflects the necessary discrepancies between indictments and jury instructions. Indictments must be phrased in the conjunctive so that society can be confident that the grand jury has found probable cause for all of the alternative theories that go forward. Juries, on the other hand, may convict a defendant on any theory contained in the indictment. As a result, judges read jury instructions in the disjunctive.

*Id.* (emphasis added). The Sixth Circuit has described this as a "well-settled principle," *id.*, and routinely endorses the practice of charging statutes which "denounce[ ] the offense disjunctively" in the conjunctive – yet proving the offense in the disjunctive. *United States v. Pirosko*, 787 F.3d 358, 368 (6th Cir. 2015); *United States v. McAuliffe*, 490 F.3d 526, 534 (6th Cir. 2007). Under these circumstances, "the government may prove and the trial judge may instruct in the disjunctive form used in the statute." *Pirosko*, 787 F.3d at 368.

7

The indictment was not constructively amended as to Jamison and the jury instructions were appropriate, therefore, appellate counsel was not ineffective for failing to raise these issues. *See Bullard*, 937 F.3d at 661. Accordingly, this ground for relief is denied.

### c. Prosecutorial Misconduct

Jamison again mirrors Johnson when he claims that appellate counsel was ineffective because they did not raise an issue of prosecutorial misconduct on appeal. Doc. 226 at 6. This ground for relief cites to grounds one and two as evidence of misconduct, but further alleges the prosecutor allowed perjury, misled the jury, utilized witness testimony that was not credible, suppressed a HUD report, and pursued illegal restitution. *Id.*

"For a habeas corpus motion to be cognizable under a claim of prosecutorial misconduct, the misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" *Marcusse v. United States*, 785 F. Supp. 2d 654, 663 (W.D. Mich. 2011) (quoting *Greer v. Miller*, 483 U.S. 756, 765 (1987) (citations omitted)). A petitioner must demonstrate that the statements of the prosecutor "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974). Jamsion's vague factual allegations, including the assertion that the Government "misled the jury" [without clarity as to which statements he takes issue with] and the "restitution is illegal" do not meet the high burden required for success on the prosecutorial misconduct claim. As such, appellate counsel was not ineffective for not raising this issue on appeal. *See Bullard*, 937 F.3d at 661. This ground for relief is accordingly denied.

8

### d. Generalized Ineffective Assistance of Counsel

In Ground Four, Jamison restates the ineffective assistance of counsel claims addressed in Grounds One thru Three. He additionally indicates counsel did not represent him well with respect to the obstruction of justice charges and failed to argue that the jury was not impartial. Doc. 226 at 7. As to the additional claims not detailed in Grounds One thru Three, Jamison fails to detail or explain how any of these grievances were deficient or prejudicial.

The Court construes the *pro se* pleading liberally pursuant to *Haines v. Kerner*, 404 U.S. 519 (1972) and assumes, with respect to the jury argument, that Jamison may be attempting to argue that counsel was ineffective when they did not object to the racial makeup of the jury, based on his statement "Doughten did not advocate on Jamison's behalf with regard to a jury partial to a black man being on the jury." Doc. 226 at 7. The Sixth Amendment guarantees Jamison a right to trial by an impartial jury, part of which includes that courts "select all grand and petit juries at random from a fair cross section of the community in the judicial district or division where the court convenes." *Taylor v. Louisiana*, 419 U.S. 522, 528–29 (1975). However, this requirement focuses on the procedure for selecting juries, which does not require that juries chosen must actually mirror the community. *United States v. Johnson*, 95 F.4th 404, 410 (6th Cir. 2024). Further, to establish a prima facie case for a fair-cross-section claim, a defendant must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979). Jamison has made no such showing, or even a suggestion here. As such, trial counsel's representation was not deficient when he did not make a baseless objection. *See Strickland,* 466 U.S. at 688. This ground for relief is accordingly denied.

9

### e. Conspiracy of Counsel and Prosecution

In Ground Five, Jamison makes far-fetched claims, this time alleging that his counsel somehow conspired with the Government to arrange for an undercover agent to attend a meeting between him and his attorney and influence Jamison to "talk to the prosecutor." Doc. 226 at 8. It is unclear whether Jamison intends these facts as support for another ineffective assistance of counsel claim, or one of prosecutorial misconduct. However, as the Government notes, Jamison admits he did not speak to the prosecution during this meeting, *id.*, therefore, any alleged conspiracy to get him to do so was unsuccessful and had he has not proven an impact on his case.

### f. Failure to Object to Presentence Investigation Report

Next, Jamison claims his counsel was ineffective for failing to object to the Presentence Investigation Report ("PSR") (Doc. 151), which he claims was unconstitutionally vague and illegally assessed restitution, mainly by constructively attributing counts two thru five of the indictment to him and inflating the restitution amount accordingly. Doc. 226 at 8. However, a restitution order is not limited to conduct accounted for in a specific count, rather, a court may base restitution on the amount attributable to the *scheme* the defendant carried out. *United States v. Boggs*, 737 Fed. Appx. 243, 257 (6th Cir. 2018); *see also United States v. Elson*, 577 F.3d 713, 723 (6th Cir. 2009) ("if someone is convicted of a conspiracy, the court can order restitution for damage resulting from any conduct that was part of the conspiracy and not just from specific conduct that met the overt act requirement of the conspiracy conviction"). Therefore, because Jamison was convicted of the overarching conspiracy (Count One), the PSR properly detailed related conduct also associated with other counts of the indictment and Jamison's counsel was not ineffective for failing to raise a baseless objection. *See Strickland,* 466 U.S. at 688. This ground for relief is accordingly denied.

### g. New Evidence

Finally, Jamison contends that he is entitled to relief on the basis of newly discovered evidence. He points to a publication from Cleveland City Council, which he claims establishes that council, rather than Fitzpatrick, financed the Elite basketball team. Doc. 226 at 8. He further claims that the Government misled the jury as to this issue. *Id.*

A freestanding claim of actual innocence is not cognizable in a § 2255 proceeding. *See Avery v. United States*, No. 17-5473, 2017 WL 9248941, at *3 (6th Cir. Nov. 13, 2017) (citing *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007). The alleged new evidence does not establish how Jamison's rights were violated or that his counsel was ineffective in relation to the evidence. As such, it provides no basis for relief. Further, contrary to Jamison's statement, the article does not even make a suggestion as to what funds were associated with the Elite basketball team. The article does nothing to undercut the substantial evidence the Government presented that demonstrated Jamison's involvement in many schemes, not limited to the sports team reimbursements. He also does not indicate how Johnson's "tax form" is relevant to his claim or why it is considered new evidence.[1] As such, even if the Court were to consider the merits of Ground Seven, it would fail. This ground for relief is accordingly denied.

### IV. ACCOMPANYING MOTIONS

Jamison has also filed a *Motion to Strike Government's Consolidated Motion for a 35-day Extension of Time* (Doc. 238) and included a request for an evidentiary hearing with his reply brief (Doc. 246 at 14).

---

[1]  Johnson's IRS form 1040 was included in the Government's exhibit list. Doc. 75 at 5.

The motion to strike is mainly based Jamison's disagreement with any delay caused by the extension of the Government's time to respond to his Motion, and the Government's apparent failure to seek leave of Court to combine Jamison's Motion with the simultaneously filed § 2255 motion of his co-defendant. Doc. 238 at 2. The Court found good cause for the extension when it granted the request (Doc. 236) and the Government did not combine the two § 2255 motions, rather it filed its response to this Motion as to Jamison only and responded separately to his co-defendant's § 2255 motion. Accordingly, the Motion to Strike (Doc. 238) is DENIED,

In a § 2255 proceeding, "no evidentiary hearing is necessary when a movant's claims cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Norwood v. United States*, No. 23-1684, 2025 U.S. App. LEXIS 2683, at *5 (6th Cir. Feb. 5, 2025) (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999). Jamison's claims all lack merit and/or are contradicted by the record, so an evidentiary hearing is not necessary. Accordingly, his request for an evidentiary hearing is DENIED.

### V. CONCLUSION

For the foregoing reasons, Jamison's *Motion to Vacate, Set Aside, or Correct a Sentence* (Doc. 226) and *Motion to Strike* (Doc. 238) are DENIED.

**IT IS SO ORDERED.**

<u>October 23, 2025</u>         <u>  */s/ John R. Adams*  </u>
DATE                                  JOHN R. ADAMS
                                      UNITED STATES DISTRICT JUDGE